# DUNCAN v. DICKIE RECTOR LUMBER CO. et al.
## 212 S. W. (2d) 908.

Eastern Section.   March 9, 1948.

Petition for Certiorari denied by Supreme Court, June 12, 1948.

156

Maxwell Sexton, of Oneida, for plaintiff in error.

Howard H. Baker of Huntsville, for defendant in error.

GOODMAN, J. The plaintiff, Claude Duncan brought this action against Dickie Rector Lumber Company, allegedly composed, owned and operated by Wilbur (Dickie) Rector, and (Wilbur Dickie) Rector, seeking to

recover damages for an injury allegedly sustained while working for defendants in or near Bear Creek, Scott County, Tennessee.

It is averred in the delaration that, on or about March 31, 1946, plaintiff suffered a hernia while helping to lift by hand a "huss frame", described as a part of a sawmill assembly weighing several hundred pounds; that said injuries were received within the scope of plaintiff's employment; and that the defendants, though employing more than ten persons, had failed to qualify and elect to come under the provisions of Workmen's Compensation Law of the State of Tennessee. By amendment to the declaration, the plaintiff averred that subsequently, and on or about the 30th day of April, 1946, while removing and loading machinery and equipment of said sawmill, he reinjured himself, thereby aggravating his condition. The defendants are charged with negligence in failing to provide a safe and conveient place to perform such duties; and in failing to furnish the proper method and the necessary and proper tools or machinery with which to perform the same; and in requiring him to exert unusual strength and strain in order to lift and load said equipment.

The defendants pleaded the general issue and by further plea denied that the plaintiff had received any injury while employed by them or in the course of his employment for them; and denied that they had committed any acts of negligence of any kind toward the plaintiff.

Upon conclusion of all proof on the trial of the case, a motion for a directed verdict, made on behalf of the defendants, was sustained, and the suit dismissed. The plaintiff's motion for a new trial having been overruled, exception was taken and an appeal prayed and granted to this Court.

The five errors assigned are, in substance, directed to the action of the Court in (1) preemptorily instructing the jury to return a verdict in favor of the defendants; and (2) in overruling plaintiff's motion for a new trial. It is not considered essential here to determine whether or not an injury was suffered by the plaintiff during the course and scope of his employment by the defendants or the extent of such injury, if any. The case turns upon the question of whether there is any evidence of negligence on the part of the defendants which should have been submitted to the jury.

The plaintiff testified that, during the latter part of March, he and other employees were engaged in moving a huss frame and were trying to lift the same up and put it on a truck; and that, in so doing, he was prying with a pole and ''Somehow it slipped around and caught me until I had the whole weight of it, until they moved the weight and got it off of me and it hurt me,''; and that while moving the mill again, the later part of April, he reinjured himself.

It is conceded that since the defendants had elected not to comply with the Workmen's Compensation Law, they were deprived of the common law defenses of assumption of risk or the negligence of a fellow servant. Code Section 6857, 6862. Therefore, since the employer is not an insurer to his employees of the safety of their working place, in order for the defendants to be responsible in damages to the plaintiff, there must be proof of their negligence demonstrated by the fact that they had notice of a defective condition of the premises or working tools or in the exercise of ordinary care, should have discovered such defects in time to have remedied the same. Moore Coal Co. v. Brown, 166 Tenn. 516, 64 S. W. (2d) 3; Memphis Street Ry. Co. v. Stockton, 143 Tenn. 201, 226

S. W. 187, 22 A. L. R. 1467; Acme Box Co. v. Gregory, 119 Tenn. 537, 105 S. W. 350; Griffin & Son v. Parker, 129 Tenn 446, 164 S. W. 1142, L. R. A. 1917F, 497; Nashville, C. & St. L. R Co. v. Hayes, 117 Tenn. 680, 99 S. W. 362; East Tennessee & W. N. C. R. Co. v. Lindamood, 111 Tenn. 457 78 S. W. 99.

We find no conflict in the evidence material to the issues here The plaintiff had worked on similar jobs prior to the injury complained of and had assisted in the moving of the defendants' mill on previous occasions.

Describing how a sawmill was moved from place to place, the plaintiff testified, "The motor was moved, it was pulled on the ground; the carriage and the huss frame were put on a truck. Lots of times we moved the skid poles to different places and roled the huss frame." He described the huss frame as, "The saw mandrel where the sawyer stands and pulls the lever." The weight of a huss frame was estimated by the plaintiff at from twelve to fifteen hundred pounds, and by the mill foreman at five, six or seven hundred pounds. The plaintiff testified, "We were moving the huss frame the first time I hurt myself, about the last of March. We were prizing with prize poles and things trying to lift the huss frame up and put it on the truck. I believe I was prying with a pole and somehow it slipped around and caught me until I had the whole weight of it, until they moved the weight and got it off me and it hurt me." He was asked, "How do you know you were injured there or had a rupture?" and answered, "Well, it just felt like a sting at the present time and I didn't know it was a rupture until after we got the sawmill set up and it didn't bother me for a while until we started to move the mill the second time and I helped move the carriage." With regard to the last occasion when they moved the mill, the plaintiff stated,

"We moved it right at the last of April; right at the last of April again we moved it and was loading the carriage, skidding it up with poles and things, prizing around and I hurt myself again lifting around it." Upon being asked by counsel. "What kind of tools, if you know, could have been furnished that would have averted the accident if they had been furnished?" He answered, "Well, they could have got a crane or could have pulled it up on the truck with the caterpillar or could have had steel bars to lift it with in place of lifting with 2x3's; could have been several things got to make it safer on the man." Upon cross-examination, he admitted that they had a caterpiller there on the job and that they could have used it. The proof showed that the foreman on the job did not tell the men how to load the mill, but that it was up to them as to whether they used the caterpiller, hands or poles. It was further shown that, on the occasion the plaintiff claimed to have been injured, he and the other employees were loading the huss frame in the usual and ordinary manner. The mill foreman, called as a witness for the plaintiff, testified that he had been in the sawmill business for forty years and that the equipment furnished by the defendants was, "a little beyond the ordinary" from the kind of tools and appliances usually furnished for such purposes.

The general rule of an employer's common law liability is stated in 35 Am. Jur., Master and Servant, as follows: "An employer is not, unless made so by statute, an insurer of the safety of his employees. The common law does not deem it politic or expedient that persons who enter the employment of others should be insured against injury incurred in the discharge of their duties. An employer is liable to an employee for injuries received in the course of employment as it ordinarily is expressed, not because of

danger which inheres in the employment, but only by reason of negligence on the part of the employer. It is essential in every case involving the liability of an employer for an injury to his employee that in the absence of some special contract or statute expressly providing therefor, there can be no recovery unless the Master has been negligent,—has been guilty of some breach of duty owing by him to the Servant. An employer is liable for consequences not of danger, but of negligence, and hence, is not to be held accountable in damages for the consequence of what commonly is termed, ".error of judgment", or for anything he could not avoid by the exercise of care and foresight."

In Moore Coal Co. v. Brown, supra [166 Tenn. 516, 64 S. W. (2d) 4], the Court having held that the defenses of assumption of risk and negligence of a fellow servant were not available to the defendant, said, "But notwithstanding the elimination of these defenses, plaintiff is entitled to damages only if his injury was proximately caused by some act or ommission on the part of the employer or his agents amounting to negligence, or want of reasonable care."

Although assumption of risk cannot here be relied upon as an affirmative defense, the fact of superior knowledge on the part of the plaintiff of the particular circumstances existing at the time of the injury and his control, to some extent at least, over the instrumentality causing the same may nevertheless serve to negative the liability of the employer. Consideration of the evidence pertaining thereto relates not to the acts of the plaintiff as a bar to his action, but to the bearing they may have upon the determination of proximate cause. The statutory restrictions relative to matters of defense, where an employer elects not to operate under the Workmen's Com-

pensation Law, Code Sec. 6862, cannot be so extended as to deprive him of other evidentiary benefits evolving from the same source furnishing basis for such defenses.

In some instances, the negligence on the part of the plaintiff serves to neutralize the negligence of a defendant; in others, it may exist though no negligence whatever is attributable to the latter. It may be the sole and proximate cause. In the instant case, we are concerned only with the question of the negligence of the employer, but the conduct of the employee, his experience and knowledge, are material with respect to the issue of whether or not the former exercised ordinary care. While the case of Williams v. Kentucky River Power Co., 179 Ky. 577, 200 S. W. 946, 10 A. L. R. 1936, and authorities cited in support thereof (Anno. 10 A. L. R. 1939) are not authoritative here, they furnish some parallel. That was a suit by an employee against his employer for injury allegedly resulting from strain in carrying lumber. Although the doctrine of assumption of risk was applied, the Court found independently that there was no negligence on the part of the employer, in absence of a showing that the plaintiff was unequal to the task assigned him and there being no proof of defect in the place, appliances or material in or with which he worked.

In the instant case, it appears that the methods and appliances used in the moving of the sawmill were those ordinarily employed in the trade. The site of operations had no apparent bearing upon the injury. Moreover, the principle relating to the duty of an employer to furnish a safe place to work is not applicable where the working place is being constantly shifting as a result of the very labor the employee is performing. Heald, Receiver, v. Wallace et at., 109 Tenn. 346, 71 S. W. 80. We believe this exception to apply to a movable sawmill

which by the nature of its operations is transferred from place to place over changing terrain. The plaintiff and his fellow employees were provided with other means by which to accomplish their task and were permitted to exercise their own choice. The plaintiff was experienced in the type of work that he was doing, as were the others assisting him; and there is no evidence of any defect in working tools or in working conditions. There is no proof of notice to the employer, either actual or contructive, of any particular hazard in connection with the sawmill operation, which he was called upon to correct. Nor does it appear from the evidence that the work, though involving strenuous effort, was so overtaxing as to impute negligence on the part of the defendants for failure to provide additional personnel or other facilities.

We, therefore, hold that there was no error in the action of the trial Judge in peremptorily instructing the jury to return a verdict in favor of the defendants. The judgment of the lower Court is accordingly affirmed. The plaintifffff in error will pay the costs of the appeal.